**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LINCOLN UNIVERSITY -- OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION<br>1570 Baltimore Pike<br>Lincoln University, PA 19352<br><br>DR. BRENDA ALLEN<br>1570 Baltimore Pike<br>Lincoln University, PA 19352<br><br>DR. FREDERICK T. FAISON<br>1570 Baltimore Pike<br>Lincoln University, PA 19352<br><br>JILLIAN STURDIVANT<br>1570 Baltimore Pike<br>Lincoln University, PA 19352<br><br>JOSH DEAN<br>1570 Baltimore Pike<br>Lincoln University, PA 19352<br><br>KAMARI McIVOR<br>1570 Baltimore Pike<br>Lincoln University, PA 19352<br><br>THE GENERAL ALUMNI ASSOCIATION OF LINCOLN UNIVERSITY, PENNSYLVANIA, INC.<br>1570 Baltimore Pike<br>Lincoln University, PA 19352<br><br>DR. ERIC BECOATS<br>P. O. Box 225<br>Chadds Ford, PA 19317<br><br>Plaintiffs,<br><br>v. | ) | Case No. ____________________ |

| | |
|---|---|
| LOWER OXFORD TOWNSHIP<br>780 Hanover Street<br>New Oxford, PA 17350 | ) |
| KEVIN R. MARTIN, in his Official Capacity as Lower Oxford Township Chairman<br>780 Hanover Street<br>New Oxford, PA 17350 | ) |
| NOEL A. ROY, in his Official Capacity as Lower Oxford Township Vice Chair<br>780 Hanover Street<br>New Oxford, PA 17350 | ) |
| ROBERT McMAHON, in his Official Capacity as Lower Oxford Township Member<br>780 Hanover Street<br>New Oxford, PA 17350 | ) |
| Defendants. | ) |

**COMPLAINT**

Plaintiffs, Lincoln University -- of the Commonwealth System of Higher Education ("Lincoln"), Dr. Brenda Allen, Dr. Frederick T. Faison, Jillian Sturdivant, Josh Dean, Kamari McIvor, The General Alumni Association of Lincoln University, Pennsylvania, Inc., and Dr. Eric Becoats, through their undersigned counsel, bring this Complaint against Defendants, Lower Oxford Township (the "Township"), Kevin Martin, Noel A. Roy, and Robert McMahon.

## INTRODUCTION

1. Large gatherings are essential to and synonymous with a higher educational institution. Lincoln, the oldest degree conferring historically black college or university in the country, will have its future events unfairly targeted and unconstitutionally burdened by the Township with the passage of Ordinance 2026-02.

2. The Ordinance is an unconstitutional overreach by the Township that places restraints and burdens on large gatherings, the core activities implicating Lincoln's academic freedom, freedom of speech, and freedom of assembly.

3. The Ordinance is a targeted, discriminatory piece of legislation that violates Lincoln's First and Fourteenth Amendments rights and runs afoul of the United States Constitution.

**PARTIES**

4. Plaintiff Lincoln University of the Commonwealth System of Higher Education is a Pennsylvania Nonprofit Corporation and a tax-exempt Section 501(c)(3) educational institution with its main residential campus at 1570 Baltimore Pike, Lincoln University (Lower Oxford Township), Chester County, Pennsylvania 19352.

5. Plaintiff Dr. Brenda Allen, with a business address at 1570 Baltimore Pike, Lincoln University (Lower Oxford Township), Chester County, Pennsylvania 19352, is the President of Lincoln University.

6. Plaintiff Frederick T. Faison, M.Ed., M.Div., Ed.D., with a business address at 1570 Baltimore Pike, Lincoln University (Lower Oxford Township), Chester County, Pennsylvania 19352, is the Chaplain, Associate Vice President, and Director of Religious Activities, Health & Wellness, and Student Success, of Lincoln University. He oversees religious and spiritual events and activities at Lincoln University, including but not limited to the annual Lincoln University baccalaureate.

7. Plaintiff Jillian Sturdivant, Assistant Vice President for Student Success and Dean of Students, Division of Student Success, with a business address at 1570 Baltimore Pike, Lincoln University (Lower Oxford Township), Chester County, Pennsylvania 19352, is involved in

overseeing and managing aspects of student life, student services, and campus behavior at Lincoln University and has involvement in managing aspects of various campus activities and events.

8. Plaintiff Josh Dean, with a business address at 1570 Baltimore Pike, Lincoln University (Lower Oxford Township), Chester County, Pennsylvania 19352, is the Director of Athletics and Recreational Services at Lincoln University.

9. Plaintiff Kamari McIvor, with an address at 1570 Baltimore Pike, Lincoln University (Lower Oxford Township), Chester County, Pennsylvania 19352, is a residential college student at Lincoln University's main campus in Lower Oxford Township and is the Student Government Association Executive President.

10. Plaintiff The General Alumni Association of Lincoln University, Pennsylvania, Inc. (the "Alumni Association"), is a Pennsylvania Nonprofit Corporation with a business address at 1570 Baltimore Pike, Lincoln University (Lower Oxford Township), Chester County, Pennsylvania 19352, whose members are alumni of Lincoln throughout the world, hundreds of whom regularly return to their alma mater campus in Lower Oxford Township to participate in Lincoln events and hallowed traditions, including but not limited to the annual Lincoln homecoming.

11. Plaintiff Dr. Eric Becoats, with an address at P. O. Box 225, Chadds Ford, Pennsylvania 19317, is an alumnus of Lincoln and is President of the Alumni Association.

12. The individuals named as Plaintiffs – to-wit Dr. Brenda Allen, Dr. Frederick T. Faison, Jillian Sturdivant, Josh Dean, Kamari McIvor, and Dr. Eric Becoats – are referred to collectively as the "Individual Plaintiffs."

13. Each of the Individual Plaintiffs has standing to join as a Plaintiff in this Complaint because, given their positions with Lincoln University, (a) they each have a personal interest in

vindicating the legal rights of Lincoln that are violated by the Ordinance; (b) they are each likely to be a speaker or participant at, or to be responsible for planning and arranging, many of the Lincoln events subject to the permitting requirements of the Ordinance, such that the Ordinance has the practical effects of limiting their rights to freedom of speech, their right to the free exercise of religion, and/or their right to be free from an establishment of religion, and/or (d) they are each potential sponsors of events as set forth in and subject to the Ordinance.

14. The Alumni Association has associational standing on behalf of its members, alumni of Lincoln, as many of the members (and their families) annually attend and participate in core University events at the Lower Oxford Township campus, including among other types of assemblies the baccalaureate, commencement, school celebrations, athletic events, and homecoming. The Alumni Association on behalf of its members seek to protect their rights to speak, assemble, and participate in Lincoln's core traditional events, including religious and academic events, without unconstitutional prior restraints and burdens.

15. Standing of the Alumni Association on behalf of its members is appropriate in that (a) protecting the ability of alumni, including alumnus Dr. Eric Becoats, to participate in Lincoln's traditions, ceremonies, athletics, cultural programs, and campus assemblies is consistent with the Alumni Association's mission; (b) the Alumni Association seeks injunctive relief invalidating or enjoining the Ordinance based on the facial terms of the ordinance at issue and the Township's standardless discretion, not requiring individualize proof of member's damages; and (c) Alumni Association members would have standing in their own right in that the Ordinance at issue imposes chilling unconstitutional burdens on events that they intend to attend, participate in, or sponsor at Lincoln.

16. Defendant Township of Lower Oxford (the "Township"), Chester County, Pennsylvania, with its municipal offices at 220 Township Road, Oxford (Lower Oxford Township), Pennsylvania 19363, is a Second-Class Township, and a political subdivision of the Commonwealth of Pennsylvania.

17. Defendant Kevin R. Martin, with a business address at 220 Township Road, Oxford, Pennsylvania 19363, is the Chairman and one of three members of the Lower Oxford Township Board of Supervisors, which is the elected governing body of the Defendant Township. Martin has not just acted in a legislative capacity in the enactment of the Ordinance but is acting and will act in an administrative capacity in the enforcement thereof.

18. Defendant Noel A. Roy, with a business address at 220 Township Road, Oxford, PA 19363, is the Vice Chairman and one of three members of the Lower Oxford Township Board of Supervisors. Roy has not just acted in a legislative capacity in the enactment of the Ordinance but is acting and will act in an administrative capacity in the enforcement thereof.

19. Defendant Robert McMahon, with a business address at 220 Township Road, Oxford, PA 19363, is one of three members of the Lower Oxford Township Board of Supervisors. McMahon has not just acted in a legislative capacity in the enactment of the Ordinance but is acting and will act in an administrative capacity in the enforcement thereof.

## JURISDICTION AND VENUE

20. Lincoln's federal law claims arise under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

21. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). Declaratory relief is authorized by 28 U.S.C. §§ 2201-02.

22. Venue is proper in this District under 28 U.S.C. § 1391(b) because both Lincoln and the Township are located in this District, and a substantial part of the events or omissions giving rise to this claim occurred here.

23. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state constitutional claims and state law claims arising under Pennsylvania law relating to the invalidity of the Township's Ordinance, as set forth in Counts VII through XII of this Complaint, because such state law claims are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

## FACTUAL BACKGROUND

### Lincoln University

24. Lincoln was originally chartered by the Commonwealth of Pennsylvania in 1854. Lincoln is the nation's first degree-granting Historically Black College and University ("HBCU").

25. Lincoln University's main campus is located on 422 acres in Chester County, within the town limits of Lower Oxford Township, and has approximately 1,600 residential students, the overwhelming majority of whom are of African descent, as well as several hundred faculty, administrators, and employees who work at the main campus. (All references herein to the "campus" shall mean the main campus of Lincoln.)

26. Lincoln has played a significant role in expanding access to higher education, preparing generations of students for leadership in public service, education, law, business, science, and government. Lincoln has maintained an international reputation for preparing and producing world-class leaders, including Justice Thurgood Marshall, who lived and studied on the Lincoln campus before arguing the civil rights landmark case of *Brown v. Board of Education* before the United States Supreme Court, and who later became the first African American U.S.

Supreme Court Justice. Examples of other world-class alumni include Langston Hughes '29, the noted poet; Nnamdi Azikiwe '30, the first president of Nigeria; Kwame Nkrumah '39, the first president of Ghana; Lillian Fishburne '71, the first African American woman promoted to rear admiral in the U.S. Navy; Sheila Oliver '74, the lieutenant governor of New Jersey; Saara Kuugongelwa '94, the first female prime minister of Namibia; and myriad others.

27. As part of its academic mission, Lincoln hosts numerous events on its campus, including but not limited to graduations, baccalaureates, homecomings, guest speakers, sporting events and several other collegiate gatherings.

28. Lincoln's campus is generally self-contained. Lincoln's campus has several parking lots, all of which are compliant with applicable zoning approvals and/or grandfathered rights.

29. The main entrance to Lincoln's campus is via a PennDOT Highway occupancy-permitted driveway from a State two-lane road.

30. Lincoln does not request the use of Township roads for any large gatherings. When hosting events, Lincoln never requests that the Township close or have special restrictions placed on any Township roads. Further, Lincoln never requests anything from the Township related to any events on its campus.

**The Ordinance**

31. On August 10, 2026, the Township passed Ordinance No. 2026-02, entitled "AN ORDINANCE OF LOWER OXFORD TOWNSHIP, CHESTER COUNTY, PENNSYLVANIA, AMENDING THE CODE OF THE TOWNSHIP TO ADD CHAPTER 19, SPECIAL EVENTS, AND PROVIDING FOR PENALTIES FOR VIOLATION OF THE ORDINANCE" (the "Ordinance"). The Ordinance is attached as **Exhibit A**.

32. As shown on the face of the Ordinance, the Township claims to have exercised its statutorily delegated power to adopt the Ordinance based solely and "specifically [on] Section 53 Pa. Stat. Ann. Section 67328" of the Pennsylvania Second Class Township. That authorization is, in turn, limited to the power of a Second Class Township to regulate parking on public streets in the Township, providing in its entirety as follows:

***§ 67328. Regulation of parking***

> (a) The board of supervisors may by ordinance regulate parking, provide parking accommodations to promote the convenience and protection of the public, post signs regulating parking in areas established or designated for handicapped or severely disabled veteran parking and impose penalties for the violation of those regulations.
>
> (b) The board of supervisors may provide for the erection, maintenance and regulation of parking meters, and it may by ordinance establish parking meter charges and impose penalties for the violation of those regulations.

53 P.S. Sec. 67328.

33. The Ordinance regulates far more than parking.

34. The Ordinance claims that "activities associated with special events can constitute a hazard to the public's health, safety and welfare and that these activities can also create a public ***nuisance*** when unregulated." Ex. A, § 19-102 (emphasis added).

35. The Ordinance imposes a variety of permitting requirements and other requirements on anyone sponsoring a "special event," including "special events" that occur wholly within Lincoln's 422-acre campus which are attended principally – or even exclusively – by Lincoln students, faculty and staff.

36. The Ordinance defines "special event" as assemblies that meet either of two criteria:

> A temporary event, gathering or organized activity in the Township.
>
> 1. ***The gathering of more than 500 persons** at* a location and for a purpose not in the ordinary course of business or customary activity of the property owner [the "Size Element"].
>
> 2. ***The event will result in substantial impact on Township resources,*** facilities, or public safety services in response thereto [the "Impact Element'].

Ex. A, § 19-103 (emphasis added).

37. The Size Element and the Impact Element are in the disjunctive, such that an event will be considered a "special event" and, thus, require a permit, regardless of the number of people in attendance if the event "will result in substantial impact on Township resources, facilities, or public safety services in response thereto."

38. The Ordinance further expands on its definition of "special event," to expressly deem certain core activities at Lincoln as regulated events for which prior permitting must be obtained from the Township, stating:

> Examples of special events include, but are not limited, to ***College homecoming or other similar events, college, university or school commencement, graduation or baccalaureate,*** fairs, festivals, community events, half marathons, 10Ks, 5Ks and other running events, bicycle races and tours, motorcycle rides, special golf outings or events, as distinct from routine play, and other organized activity conducted for the purpose of recreation, fund-raising, for profit, nonprofit fund-raising, community or organizational promotion or charity.

Ex. A, § 19-101(B) (emphasis added).

39. The Ordinance addresses activities protected by the First Amendment and explains – in a backhanded way – that the First Amendment will not insulate a "special event" from the reach of the Ordinance:

> First Amendment events that ***do not*** involve any of the elements of this ordinance ***are not*** special events, however if the First Amendment event includes an expected number of attendees at or exceeding the number

> identified as a special event under this ordinance then compliance with the health and safety regulations herein also apply.

Ex. A, § 19-101(B) (emphasis added).

40. In other words, First Amendment events that involve any of the elements of this Ordinance are special events under the Ordinance.

41. The Ordinance further expands the definition of "special event." The Size Element does not apply to events "in the ordinary course of business or customary activity of the property." *See supra*. While listing several types of routine events that are presumptively not subject to the Ordinance, the Ordinance allows the Township to override that exemption at will, both for the listed events and any other event:

> ***Routine Events*** – certain regularly scheduled events that may or may not contain or include one or more of the elements listed above in subparagraph A may not be subject to the terms of this Ordinance, ***depending upon the nature of the event and the determination of the Township***. Examples of such events include, but are not limited to:
>
> 1. scholastic or collegiate athletic events not connected to any additional special event, such as homecoming
> 2. church services
> 3. golf outings not connected to any additional special event
> 4. regular sales events
>
> Please note that the regular occurrence of an event alone does not render it routine and that many events that occur on a regular annual or more frequent basis may still be considered special events. The Township reserves the right, ***at its sole discretion, to determine whether any given event qualifies as a routine event or a special event*** under the terms of this Ordinance.

Ex. A, § 19-101(B) (emphasis added).

42. The Ordinance allows the Township in its sole discretion to require a permit for anything it deems to be a special event. "No sponsor, person, association, firm, corporation, or other entity shall conduct any special event or community event as defined herein in Lower Oxford Township without first having obtained a permit from the Township." Ex. A, § 19-104.

43. The Ordinance requires the application for a special event permit to be "submitted by the sponsor, [the person, group, organization responsible for organizing the event,] to the Township no less than 30 days prior to the special event." Ex. A, § 19-105(A).

44. An application "shall be further accompanied by such other information as may be required by the Township." Ex. A, § 19-105(C). No objective standards are provided for the Township's exercise of this discretion. *See id.*

45. The Ordinance then allows the Township to be the sole arbiter of whether a special event is permitted by assessing an application, allegedly "to ensure that the date, time and place of the event, as well as the number of attendees and the traffic, parking and emergency plans are established." Ex. A, § 19-107(A).

46. The Ordinance also allows the Township to review "the impact offsite caused by the special event insofar as it impacts public roads and other public safety issues." Ex. A, § 19-107(A). No objective standards are provided for the Township's exercise of this discretion. *See id.*

47. The Ordinance empowers the Township in its sole discretion to approve or disapprove an application. Ex. A, § 19-107(B). No objective standards are provided for the Township's exercise of this discretion. *See id.*

48. As the Township considers an application, the Ordinance allows it to "***require additional conditions not herein mentioned*** as may be necessary to maintain peace and order or to protect the health, safety and general welfare of the citizens of the Township or any neighboring property." Ex. A, § 19-107(C) (emphasis added). No objective standards are provided for the Township's exercise of this discretion. *See id.*

49. Similarly, the Ordinance empowers the Township with final discretion to "adjust" "[a]ll regulations and/or requirements set forth in this chapter related to events." Ex. A, § 19-108(E). No objective standards are provided for the Township's exercise of this discretion. *See id.*

50. The Township has the final word on whether an application is approved. Ex. A, § 19-107(D).

51. Furthermore, without citing any statutory provision granting it the power to do so, the Township requires all events (including events entirely within the confines of Lincoln's campus) to "obtain liability insurance" with "the Township named as an additional insured." Ex. A, § 19-107(B). The insurance policy is also subject to Township Solicitor's discretionary approval, with no objective standards. *Id.* The Ordinance does not refer to any alleged insurable interest of the Township that is to be insured with respect to events on private property for which no Township resources have been requested. *See id.*

52. The Ordinance also makes the sponsor of a special events liable for actions of people over whom it has no control: "The sponsor holding the special event shall be responsible to the Township for damages sustained to Township property caused by participants in the special event." Ex. A, § 19-108(D).

53. If the Township decides that a sponsor has failed to comply with a permit or regulations, the Township may revoke the permit, with ***no provision for a hearing*** in advance of revocation. In such a case, the sponsor is forced to "cease and desist its activities." Moreover, the sponsor "***shall be prevented from applying for another permit for at least two years from the date of revocation***." Ex. A, § 19-110(C) (emphasis added).

54. Similarly, after a special event ends, if the Township decides there was violation, the Township may, with ***no provision for a hearing*** in advance, "suspend for two years the right of the sponsor conducting the special event to apply for another permit to conduct a special event." Ex. A, § 19-110(D).

55. Although the Township invokes its authority to regulate parking as its basis for the Ordinance, it cites no enabling act authority allowing it to impose such a penalty – not even for parking violations. Indeed, penalties for violations of parking regulations adopted pursuant to the Second Class Township Code are limited to fines imposed by a district justice in conjunction with a summary offense conviction, or equitable relief ordered by the Court of Common Pleas. *See* 53 P.S. § 66601.

56. The Ordinance imposes a $1,000 fine for any violation of any of its provisions, and "each day that a violation of this chapter continues shall constitute a separate offense." Ex. A, § 19-112.

57. Notwithstanding any purported facial "neutrality" in the language of the Ordinance, it was enacted by the Township with the deliberate purpose and with the calculated effect of targeting Lincoln. Specifically, the Ordinance was enacted to interfere with Lincoln's academic mission and with the speech and other academic activities of the Individual Plaintiffs and their academic colleagues (the "Anti-Lincoln Targeting Motive").

58. The Anti-Lincoln Targeting Motive is shown, *inter alia*, by the comments in Township supervisor meetings leading up to the adoption of the Ordinance.

59. Under Section 1601(a) of the Pennsylvania Second Class Township Code, 53 P.S. § 66601(a), when, as here, an ordinance does not expressly provide for a later effective date, it becomes effective immediately upon adoption.

60. By its express terms, the Ordinance violates the constitutional rights of Lincoln and the Individual Plaintiffs in several ways, as set forth below.

## CLAIMS FOR RELIEF

## COUNT I

### Violation of the First Amendment Right to Free Speech (42 U.S.C. § 1983)

61. Plaintiffs re-allege, as if set out in full, the allegations of the foregoing paragraphs.

62. "[A]cademic freedom" is "a special concern of the First Amendment." *Keyishian v. Bd. of Regents of Univ. of State of N. Y.*, 385 U.S. 589, 603 (1967).

63. Given its academic mission, Lincoln frequently engages in constitutionally protected speech, as do the Individual Plaintiffs.

64. As an academic institution, Lincoln also has a constitutionally protected interest in facilitating on its campus the speech of faculty, students, guest speakers and others, even where the speech is not the speech of Lincoln. Lincoln has a constitutionally protected interest in serving as a marketplace of ideas.

65. The Individual Plaintiffs also have a constitutionally protected interest in fostering and ensuring Lincoln remains a marketplace of ideas.

66. The Ordinance imposes restrictions on Lincoln's own speech – and on its ability to serve as a marketplace of ideas – by prohibiting events at Lincoln that serve as forums for speech unless Lincoln first obtains a permit from the Township.

67. The Ordinance also imposes burdens of the ability of the Individual Plaintiffs to engage in speech and hear the speech of others.

68. Events sponsored by Lincoln or by Individual Plaintiffs in furtherance of their academic mission are protected by the First Amendment, including events where "speech" as that

term is used in common parlance is not the primary focus of the event such as athletic events, homecomings and traditional social events of the sort held at residential college campuses across the country (*e.g.*, dances and dinners for students and their dates or guests).

69. The Ordinance targets Lincoln, the Individual Plaintiffs and their colleagues at Lincoln. In defining what qualifies as a "special event," the Size Element of the Ordinance does not reach gatherings that are "in ordinary course of business or customary activity of the property owner." *See* Ex. A, § 19-109(B). However, the Ordinance expands on the definition so as to include within its scope certain collegiate gatherings regardless of whether they satisfy the Size Element or the Impact Element. *See* Ex. A, § 19-109(A) (listing "College homecoming or other similar events, college, university or school commencement, graduation or baccalaureate" as "[e]xamples of special events").

70. There is no college in the Township other than Lincoln, a fact reflected on the face of the Ordinance, which refers to "***a*** college" as an entity holding special events. Ex. A, §19-101 (emphasis added).

71. The speech forums thus prohibited without a permit include, without limitation, not only those education events specifically listed by the Ordinance, but other convocations and assemblies of various types that Lincoln routinely holds, sponsors, encourages or permits on its campus, and in which students, faculty, alumni, and other members of the campus community regularly participate.

72. Because the Ordinance treats speech forums as "nuisances," it is a *per se* violation of the First Amendment.

73. In the alternative, because the Ordinance imposes restrictions on Lincoln's speech and the speech of the Individual Plaintiffs, it violates the First Amendment ***unless*** the Township

can show that (a) the Ordinance satisfies strict scrutiny (*i.e.* that it is narrowly tailored to achieve a compelling governmental interest), or (b) that it is a reasonable time, place and manner restriction.

74. The Ordinance cannot be justified under strict scrutiny because the Ordinance was motivated by the Anti-Lincoln Targeting Motive.

75. Even if the Ordinance were not so targeted, it cannot survive strict scrutiny because it is not narrowly tailored to achieve a compelling governmental interest.

76. Moreover, the onerous requirements of the Ordinance have no obvious logical connection of any kind, let alone a compelling connection, to the regulation of public ***parking*** by the Township, which is, again, the authority cited by the Township in enacting the Ordinance.

77. The Ordinance cannot be justified as a reasonable time, place and manner regulation for a variety of reasons, including but not limited to the following:

a. There are no time limitations in the Ordinance. It applies 24 hours a day and 365 every day of the year;

b. The Ordinance applies to all places in the Township, including all places at Lincoln's 422-acre campus;

c. The Ordinance regulates all assemblies of more than 500 people at Lincoln, even where the assembly is composed predominantly – or even exclusively – of students residing at Lincoln and faulty or staff employed at Lincoln;

d. The Ordinance prohibits Lincoln and any sponsoring Individual Plaintiffs from holding a "special event" unless they expend funds to purchase liability insurance and names the Township as an additional insured. *See* Ex. A, § 19-108(B) ("All events shall obtain liability insurance in the amount denoted [by the Township] on the application, which may change from time to time, with the Township named as an additional insured."). No enabling act provision is cited in the Ordinance for the extraordinary requirement of purchasing insurance coverage for a Pennsylvania municipality for events on private property, whether or not those events are protected by the First Amendment;



126715162.1

e. The Ordinance purports to impose liability on Lincoln, and any sponsoring Individual Plaintiffs, for acts by individuals over whom they exercise no control and whose only connection to Lincoln is that they attended or will attend a "special event" there. Ex. A, § 19-108(D) ("The sponsor holding the special event shall be responsible to the Township for damages sustained to Township property caused by participants in the special event.");

f. The Ordinance operates as a permit scheme affecting First Amendment rights and, thus, must contain adequate procedural safeguards, including narrow, objective, and definite standards guiding the licensing authority. The Ordinance contains no such standards;

g. The Ordinance burdens substantially more speech than is necessary to further any legitimate governmental interest; and

h. The Ordinance is otherwise unduly vague for all the reasons set forth in Count IV hereof.

78. The Ordinance is not saved by its statement that "First Amendment events that do not involve any of the elements of this ordinance are not special events…." Ex. A, § 19-109(A). By implication, the statement confirms that First Amendment events (including speech forums) ***are*** "special events" and, thus, subject to the Ordinance if they involve "any of the elements" of the Ordinance, which is to say the Size Element or the Impact Element. *See supra* at ¶¶ 39-40.

79. In addition, the Ordinance specifically lists "College homecoming or other similar events, college, university or school commencement, graduation or baccalaureate" as "[e]xamples of special events" whether or not they meet the Size Element or the Impact Element.

80. Independently of its other violations, the Ordinance violates the First Amendment by allowing the Township to impose a two-year or longer ban on "special events" – including speech forums – for any violation of the Ordinance or permits issued under the Ordinance. *See* Ex. A, §§ 19-110(C) and (D).

81. For the foregoing reasons, the Ordinance violates the Free Speech Clause of the First Amendment, made applicable to the States – and, hence, to the Township – by the Fourteenth Amendment.

82. The Township's enactment and enforcement of the Ordinance is actionable under 42 U.S.C. § 1983.

83. Lincoln and the Individual Plaintiffs – as well as other faculty, administrators, students, and other members of its HBCU campus community – will suffer irreparable harm by being unable to conduct speech forums without having to go through the Township's arbitrary permitting process.

84. By enacting, maintaining, and enforcing the Ordinance, the Township has deprived Lincoln and the Individual Plaintiffs of rights secured by the First Amendment in violation of 42 U.S.C. § 1983.

## COUNT II

### Violation of the First Amendment Right to Assembly

85. Plaintiffs re-allege, as if set out in full, the allegations of the foregoing paragraphs.

86. "The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental." *De Jonge v. State of Oregon*, 299 U.S. 353, 364 (1937).

87. "From the outset, the right of assembly was regarded not only as an independent right but also as a catalyst to augment the free exercise of the other First Amendment rights with which it was deliberately linked by the draftsmen." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 577 (1980).

88. Plaintiffs have a constitutionally protected right to "assembl[e] for any lawful purpose," *Hague v. CIO,* 307 U.S. 496, 519 (1939), not only to speak or to take action, but also to

listen, observe, and learn. Thus, the Ordinance restricts the constitutional rights of Plaintiffs to assemble even for Plaintiffs who may not intend to speak but only intend to listen to what speakers at the assembly have to say.

89. Because the Ordinance treats assemblies of more than 500 people as "nuisances," it is a *per se* violation of the First Amendment.

90. The Ordinance cannot be justified under strict scrutiny because the Ordinance was motivated by the Anti-Lincoln Targeting Motive.

91. Even if the Ordinance were not so targeted, it cannot survive strict scrutiny because it is not narrowly tailored to achieve a compelling governmental interest.

92. The Ordinance cannot be justified as a reasonable time, place and manner regulation for a variety of reasons, including but not limited to those set forth above in Paragraph 77.

93. Again, the Ordinance is not saved by its statement that "First Amendment events that do not involve any of the elements of this ordinance are not special events…." Ex. A, § 19-109(A). By implication, the statement confirms that First Amendment events (including assemblies) ***are*** "special events" and, thus, subject to the Ordinance if they involve "any of the elements" of the Ordinance, which is to say the Size Element or the Impact Element. *See supra* at ¶¶ 39-40.

94. In addition, the Ordinance specifically lists various forms of assembly ("College homecoming or other similar events, college, university or school commencement, graduation or baccalaureate") as "[e]xamples of special events" whether or not they meet the Size Element or the Impact Element.

95. Independently of its other violations, the Ordinance violates the First Amendment by allowing the Township to impose a two-year or longer ban on "special events" – including assemblies – for any violation of the Ordinance or permits issued under the Ordinance. *See* Ex. A §§ 19-110(C) and (D).

96. For the foregoing reasons, the Ordinance violates the Right to Assembly Clause of the First Amendment, made applicable to the States – and, hence, to the Township – by the Fourteenth Amendment.

97. The Township's enactment and enforcement of the Ordinance is actionable under 42 U.S.C. § 1983.

98. Lincoln and the Individual Plaintiffs – as well as other faculty, administrators, students, and other members of its HBCU campus community – will suffer irreparable harm by being unable to assemble in groups of more than 500 without having to go through the Township's arbitrary permitting process.

99. By enacting, maintaining, and enforcing the Ordinance, the Township has deprived Lincoln and the Individual Plaintiffs of the Right to Assembly secured by the First Amendment in violation of 42 U.S.C. § 1983.

## COUNT III

### Violation of the First Amendment Right to Free Exercise of Religion

100. Plaintiffs re-allege, as if set out in full, the allegations of the foregoing paragraphs.

101. The Ordinance specifies that "baccalaureates" are "special events" and, thereby, prohibits Lincoln and the Individual Plaintiffs from holding baccalaureates unless they first obtain a permit from the Township.

102. Lincoln has consistently held baccalaureates on its campus and will do so in the spring of 2027 and thereafter.

103. Baccalaureates at Lincoln have been organized, and will in the future be organized, by Plaintiff, Dr. Frederick T. Faison, who is Chaplain of Lincoln, and whose involvement with the baccalaureates reflects both his administrative duties and his own religious faith.

104. Baccalaureates in general – and baccalaureates at Lincoln in particular – are religious services with a distinct set of participants and distinct purpose. Their chief participants are students who have earned and are soon to receive an academic degree, their families and faculty. They are held for the purpose of thanking God for His blessings and guidance in bringing students to the point of graduation and seeking His continued blessings and guidance as students move forward in life. Like many other religious services, baccalaureates are typically characterized by singing hymns, prayer, and a message or sermon with religious themes germane to the occasion.

105. Because the Ordinance expressly identifies "university… baccalaureate[s]" for unfavorable treatment, and because there is only one university in the Township (Lincoln University), it is clear that the Township has singled out the Lincoln baccalaureates for unfavorable treatment.

106. By prohibiting Lincoln and the Individual Plaintiffs from holding baccalaureates without a permit from the Township, the Ordinance violates the Free Exercise Clause of the First Amendment, made applicable to the States – and, hence, to Township – by the Fourteenth Amendment.

107. The violation is especially egregious given the standardless discretion that the Ordinance vests in the Township, and the financial burdens and risks that the Ordinance imposes on those who hold baccalaureates.

108. The Township's enactment and enforcement of the Ordinance is actionable under 42 U.S.C. § 1983.

109. Lincoln and the Individual Plaintiffs – as well as other faculty, administrators, students, and other members of its HBCU campus community – will suffer irreparable harm by being unable to perform or participate in baccalaureate services without having to go through the Township's arbitrary permitting process.

**COUNT IV**

**Violation of the Establishment Clause and First Amendment Right to Free Exercise of Religion**

110. Plaintiffs re-allege, as if set out in full, the allegations of the foregoing paragraphs.

111. While expressly prohibiting "baccalaureates" without a permit, the Ordinance exempts "church services" from the category of "special events" and, thereby, exempts "church services" from the permit requirements and from the financial burdens and risks that the Ordinance imposes on those who hold "baccalaureates."

112. By distinguishing between "baccalaureates" and "church services," the Ordinance discriminates against certain religious services based on the sponsor, participants and/or religious purpose of those services.

113. The Establishment Clause prohibits government action that favors, prefers, endorses, or advances one religious organization, denomination, or form of religious exercise over another. Any such discrimination constitutes a denominational preference, and "[t]he clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente,* 456 U. S. 228, 244 (1982)

114. Accordingly, the discrimination against baccalaureates created by the Ordinance "must satisfy the highest level of judicial scrutiny." *Cath. Charities Bureau, Inc. v. Wisconsin Lab. & Indus. Rev. Comm'n*, 605 U.S. 238, 254 (2025).

115. The Ordinance is subject to strict scrutiny, which it cannot survive.

116. By discriminating against baccalaureates as a form of religious service, the Ordinance violates both the Establishment Clause and the Free Exercise Clause, made applicable to the States – and, hence, to the Township – by the Fourteenth Amendment.

117. The Township's enactment and enforcement of the Ordinance is actionable under 42 U.S.C. § 1983.

118. Lincoln and the Individual Plaintiffs – as well as other faculty, administrators, students, and other members of its HBCU campus community – will suffer irreparable harm by being unable to perform or participate in baccalaureate services without having to go through the Township's arbitrary permitting process and by being subjected to the religious discrimination inherent in the Ordinance.

**<u>COUNT V</u>**

**Violation of Due Process: Vagueness**

119. Plaintiffs re-allege, as if set out in full, the allegations of the foregoing paragraphs.

120. The Ordinance is unconstitutional even with respect to events that do not implicate the First Amendment because it is unduly vague in its requirements and because it vests the Township with overly broad discretion.

121. A law is unconstitutionally vague if it (1) fails to give persons of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited, or (2) encourages arbitrary and discriminatory enforcement. *Grayned v. City of Rockford*, 408 U.S. 104 (1972).

122. The Ordinance runs afoul of both prongs of this test.

123. While some events clearly fall within the Ordinance's definition of "special event," the Ordinance fails to provide a clear explanation of its reach because it empowers the Township to determine on an *ad hoc* basis whether an event is a "special event" and, thus, subject to the Ordinance's permitting requirements.

124. Specifically, the Ordinance states that "certain regularly scheduled events that may or may not contain or include one or more of the elements listed above in subparagraph A may not be subject to the terms of this Ordinance, depending upon the nature of the event and ***the determination of the Township***." Ex. A, § 19-109(C) (emphasis added).

125. The Ordinance is also unduly vague because the Ordinance does not define "substantial impact on Township resources, facilities, or public safety services" as that phrase is used in the Impact Element.

126. Thus, anyone within the Township (including Lincoln and the Individual Plaintiffs) could conduct an event with the reasonable belief that it is not covered by the Ordinance, only to be told by the Township that the event was a "special event" after all, thus subjecting them to the punishments provided by the Ordinance, including a penalty of $1,000 per day and a two-year ban on the right to conduct special events.

127. And, if the individuals or organization wishing to conduct the event apply in advance for a permit, they still face vagueness because of the unfettered discretion the Ordinance gives to the Township whether to approve, deny, or revoke a permit.

128. The Ordinance allows the Township to arbitrarily impose "additional conditions not herein mentioned as may be necessary to maintain peace and order or to protect the health,

safety and general welfare of the citizens of the Township or any neighboring property." *Id.* § 19-107(C).

129. The Ordinance's provisions collectively fail to give adequate notice of what is regulated and invite arbitrary and discriminatory enforcement by the Township, clearly meeting the standard for unconstitutional vagueness.

130. The uncertainty created by the Ordinance has chilled and will continue to chill the exercise of constitutionally protected activities by Lincoln and the Individual Plaintiffs, including expressive, educational, religious, and associational events.

131. As a direct and proximate result of the Township's enactment and enforcement of the Ordinance, Lincoln and the Individual Plaintiffs have suffered and will continue to suffer irreparable injury.

132. The Ordinance is unconstitutionally vague on its face and, as applied to Lincoln, therefore violates the Due Process Clause of the Fourteenth Amendment.

133. The Township's enactment and enforcement of the Ordinance is actionable under 42 U.S.C. § 1983.

## COUNT VI

### Violation of Due Process: Unconstitutional Conditions

134. Plaintiffs re-allege, as if set out in full, the allegations of the foregoing paragraphs.

135. The Ordinance is unconstitutional even with respect to events that do not implicate the First Amendment and where vagueness and overly broad discretion are not issues.

136. The Ordinance deprives event sponsors (including Lincoln and the Individual Plaintiffs) of their liberty and/or property without due process because it makes them responsible for the illegal acts of individuals over whom it has no control and whose only connection to Lincoln

is that they attended or will attend a "special event" sponsored by Lincoln and/or the Individual Plaintiffs. Ex. A, § 19-108(D).

137. The Ordinance deprives event sponsors (including Lincoln and the Individual Plaintiffs) of their liberty and/or property without due process of law because it requires sponsors to purchase liability insurance for the Township as a condition of holding any "special event." Ex. A, § 19-108(B).

138. Each of these two provisions of the Ordinance erects an undue barrier to Lincoln and the Individual Plaintiffs in the exercise of its liberty and property rights with respect to "special events" and chills or tends to chill Lincoln and the Individual Plaintiffs in the exercise of those rights.

139. Thus, the Ordinance deprives Lincoln and the Individual Plaintiffs of their liberty and/or property without due process of law in violation of the Fourteenth Amendment.

140. The Township's enactment and enforcement of the Ordinance is actionable under 42 U.S.C. § 1983.

## COUNT VII

**Violation of the Pennsylvania Constitution,**
**Article I, Section 7**
**(Freedom of Speech)**

141. Plaintiffs re-allege, as if set out in full, the allegations of the foregoing paragraphs.

142. For the same reasons Plaintiffs allege the Ordinance violates the Free Speech Clause of the U.S. Constitution, the Ordinance violates Article I, Section 7 of the Pennsylvania Constitution.

143. Moreover, "Article I, § 7 of the Pennsylvania Constitution provides protection for freedom of expression that is broader than the federal constitutional guarantee." *Com., Bureau of*

*Pro. & Occupational Affs. v. State Bd. of Physical Therapy*, 556 Pa. 268, 275, 728 A.2d 340, 343-44 (1999).

144. Even if the facts alleged did not show a violation of the free speech protections of the U.S. Constitution, they show a violation of the free speech protections of the Pennsylvania Constitution.

145. Defendants, by enacting and threatening to enforce the Ordinance, have caused, and will continue to cause, Plaintiffs to suffer harm, including the loss of constitutional rights under Article I, Section 7 of the Pennsylvania Constitution.

## COUNT VIII

**Violation of the Pennsylvania Constitution,**
**Article I, Section 3**
**(Freedom of Religion)**

146. Plaintiffs re-allege, as if set out in full, the allegations of the foregoing paragraphs.

147. Article I, Section 3 of the Pennsylvania Constitution guarantees religious freedom.

148. For the same reasons Plaintiffs allege the Ordinance violates the Free Exercise Clause of the U.S. Constitution, the Ordinance violates Article I, Section 3 of the Pennsylvania Constitution.

149. Because the Ordinance expressly identifies "university… baccalaureate[s]" for unfavorable treatment, and because there is only one university in the Township (Lincoln University), it is clear that the Township has singled out the Lincoln baccalaureate for unfavorable treatment.

150. Defendants, by enacting and threatening to enforce the Ordinance, have caused, and will continue to cause, Plaintiffs to suffer harm, including the loss of constitutional rights under Article I, Section 3 of the Pennsylvania Constitution.

## COUNT IX

### Violation of the Pennsylvania Religious Freedom Protection Act

151. Plaintiffs re-allege, as if set out in full, the allegations of the foregoing paragraphs.

152. The Pennsylvania Religious Freedom Protection Act ("PRFPA"), 71 P.S. §§ 2401-2407, makes it unlawful for the Township, as a political subdivision, to "substantially burden a person's free exercise of religion, including any burden which results from a rule of general applicability" unless the Township can prove that the burden is "in furtherance of a compelling interest" and "[t]he least restrictive means of furthering the compelling interest." 71 P.S. § 2404.

153. As the Pennsylvania legislature emphasized in its legislative findings: "Laws and governmental actions which are facially neutral toward religion, as well as laws and governmental actions intended to interfere with religious exercise, may have the effect of substantially burdening the free exercise of religion." 71 P.S. § 2402 (1).

154. The Ordinance substantially burdens the free exercise of religion by Plaintiffs who wish to attend a baccalaureate at Lincoln or any other religious service at Lincoln where the attendance is likely to exceed 500. Those burdens include the prohibition on the holding of such religious services without a permit upon pain of monetary penalty and a two-year ban on such religious services by the sponsor of an unpermitted event, as well as the other obstacles, burdens, and arbitrary decision-making by the Township as alleged in previous paragraphs of this Complaint.

155. The burden imposed by the Ordinance is not "in furtherance of a compelling interest" nor is it "[t]he least restrictive means" of furthering any interest that the Township may claim is compelling.

156. By enacting the Ordinance, the exercise of governmental authority which threatens to substantially burden the person's free exercise of religion is imminent.

157. The Ordinance is in effect now, and it requires Plaintiffs to take burdensome actions at least 30 days in advance of any potential events, and to ensure that insurance coverage is purchased, fees paid, and an application with supporting onerous reports and materials are requisitioned and assembled in connection with such events well in advance of the event. Thus, the threat of a substantial burden on Plaintiffs' free exercise of religion is imminent within the meaning of 71 P.S. § 2405(c), which provides an exemption from the requirement to notify the Township 30 days in advance of filing suit under the PRFPA.

158. The Ordinance is invalid under the PRFPA.

**COUNT X**

**Violation of the Pennsylvania Constitution,**
**Article I, Section 20**
**(Freedom of Assembly)**

159. Plaintiffs re-allege, as if set out in full, the allegations of the foregoing paragraphs.

160. Article I, Section 20 of the Pennsylvania Constitution guarantees citizens the "right in a peaceable manner to assemble together for their common good."

161. Defendants, by enacting and threatening to enforce the Ordinance, have caused, and will continue to cause, Plaintiffs to suffer harm, including the loss of constitutional rights under Article I, Section 20 of the Pennsylvania Constitution.

**COUNT XI**

**Violation of the Pennsylvania Constitution,**
**Article I, Sections 26 and 29**
**(Civil Rights Discrimination by Political Subdivision)**

162. Plaintiffs re-allege, as if set out in full, the allegations of the foregoing paragraphs.

163. Article I, Section 26 of the Pennsylvania Constitution, provides as follows:

> Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

164. Article I, Section 29 of the Pennsylvania Constitution, further provides as follows:

> Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the race or ethnicity of the individual.

165. The public meetings and discussions of Township representatives and public comment in the many months leading up to the Township's adoption of the Ordinance repeatedly included comments making it clear that the Ordinance, while on its face looking like a general regulation, is focused on HBCU Lincoln University and its campus community, which is predominantly a population of African descent.

166. Aside from the portion of the Township population that is the Lincoln University community, the population of the Township is overwhelmingly white.

167. All three Supervisors who enacted the Ordinance are white.

168. Defendants set the automatic applicability threshold for the Ordinance at 500 persons with the knowledge that the Lincoln University community is at all times several times in excess of that threshold (and that many events at Lincoln will exceed that threshold) and with the knowledge that very few – if any – of the events outside of Lincoln would exceed that threshold and that the application of the Ordinance to any such events can be "waived or adjusted for community events at the discretion of the Township." Ex. A, § 19-108(E)).

169. The Ordinance was intentionally structured by Defendants, so that no other party or property in the Township would suffer the level of burden on the exercise of civil rights as the African American population connected to the intentionally targeted Lincoln University campus.

170. The Ordinance's disparate negative impact on the Lincoln University community is the result of deliberate racial gerrymandering – or other illicit gerrymandering – by the Defendants.

171. Defendants, by enacting and threatening to enforce the Ordinance, have caused, and will continue to cause, Plaintiffs to suffer harm, including the loss of constitutional rights under Article I.

## COUNT XII

### Substantive Invalidity of Ordinance Under Pennsylvania Municipal Law

172. Plaintiffs re-allege, as if set out in full, the allegations of the foregoing paragraphs.

173. In addition to violating the Plaintiffs' rights under both the federal and state constitutions, the Ordinance on its face far exceeds the authority of the Township under the enabling statutory provision upon which the Township purports to rely for its authority and is *ultra vires* under the Pennsylvania Constitution and well-established principles of Pennsylvania municipal law.

174. Among other fatal flaws under Pennsylvania municipal law, the Ordinance as a whole is not a reasonable parking regulation authorized by the enabling statute under which it purports to be authorized.

175. A fundamental limitation on the power of municipalities in Pennsylvania, commonly referred to as "Dillon's Rule," is the principle that, "[a] second-class township is but a political subdivision of the Commonwealth and has, therefore, only those powers which are granted it by the legislature." *Commonwealth v. Hanzlik*, 400 Pa. 134, 136, 161 A.2d 340, 341 (1960); *see also Kline v. City of Harrisburg*, 362 Pa. 438, 443-44, 68 A.2d 182, 184-85 (1949)

(citations omitted); *Commonwealth v. Creighton*, 163 Pa. Cmwlth. 68, 639 A.2d 1296, 1298 (1994).

176. The Township's Ordinance expressly relies for its authority to impose all of the restrictions, fees, and administrative burdens at issue on the "Second-Class Township Code, ***specifically*** at Sections 53 Pa. Stat. Ann. ***Section 67328***." *See* Ex. A, p. 1 (emphasis added).

177. That sole enabling act section relied upon by the Township gives Second Class Townships the limited power to establish and enforce parking restrictions on public streets of the Township (subject to statutory limitations on enforcement remedies).

178. Section 67328 of the Pennsylvania Second Class Township Code does not empower a Township to regulate parking on private (*i.e.*, non-Township) property or anywhere else other than a public street or parking area.

179. The Pennsylvania Municipalities Planning Code ("MPC"), including 53 P.S. § 10604 (zoning) and § 10704 (planned residential developments), solely governs the power of municipalities to regulate parking on non-Township property, restricting such power to new uses (not lawful preexisting uses), *see* 53 P.S. § 10107 (definition of "nonconforming use"), and only if the ordinance restrictions are adopted in accordance with certain regimented MPC zoning ordinance amendment procedures that were not followed here.

180. The Ordinance does not purport to list any portion of any Township street or other Township property as a restricted parking area, or to otherwise create any other legally recognized public parking restrictions such as metering, or to establish any allowable parking violation penalties, such as fines for a violating motorist, or immobilization, towing and impoundment of illegally parked vehicles. *See* Ex. A, *passim.*

181. Under controlling Pennsylvania law, an ordinance of a municipality "which purports to be an exercise of the police power must not be unreasonable, unduly oppressive, or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be obtained." *Holland Enters., Inc. v. Joka*, 64 Pa. Cmwlth. 129, 136, 439 A.2d 876, 880 (1982); *see also* 53 Pa. C.S. § 66506.

182. The Ordinance is not a reasonable public parking regulation authorized by 53 P.S. § 67328 and is, on the contrary, arbitrary, capricious, and contrary to Pennsylvania law. Thus, the Ordinance is, on its face, invalid in its entirety under Pennsylvania law.

183. Various specific aspects of the Ordinance underscore the extreme and improper nature of the requirements under Pennsylvania municipal law.

184. The Ordinance, for example, requires for all special events that take place on private property (and for which the Township provides no services) that the applicant purchase in advance public liability insurance coverage naming the Township as an additional insured, with terms subject to the discretionary approval of the Township Solicitor. *See, e.g.*, Ex. A, § 19-108(B).

185. Such insurance purchase requirement, in addition to being unreasonable in that the Township has no discernable insurable interest, is in excess of the authority of a Second-Class Township under Pennsylvania law.

186. While a municipality would be within its rights as an owner of its own public parks, streets, or other public property to require someone asking to use those Township-owned lands for a special event to purchase insurance naming the Township as an additional insured and/or executing an appropriate indemnity agreement, the overly broad requirement of the Ordinance which on its face applies to Lincoln University's own core academic events, like its graduation, is,

on its face, patently absurd and an unjustifiable burden on the constitutionally-protected activities of Lincoln University campus community.

187. The insurance requirement is not tailored in any way to have any reasonable connection to the Township's purpose under Ordinance enacted under the authority to 53 P.S. Section 67328 to regulate public parking on streets and public parking lots under the Township's control.

188. The very concept of charging fees under a parking regulation to parties with no public parking being provided in exchange, and no other services being provided by the Township, is also improper under basic principles of Pennsylvania law governing the authority of municipalities.

**PRAYER FOR RELIEF**

WHEREFORE, Lincoln University and the Individual Plaintiffs respectfully requests this Court to enter an order declaring that the Lower Oxford Township's "Ordinance No. 2026-02" violates the First and Fourteenth Amendments to the United States Constitution and (1) preliminarily and permanently enjoin the Township from enforcing the Ordinance, (2) award nominal damages, compensatory damages as appropriate, costs, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and (3) grant such further relief as the Court deems just and proper.

Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

Date: August 21, 2026

/s/ James A. Diamond

James A. Diamond, Esquire (PA ID 43902)
jdiamond@eckertseamans.com
Renardo L. Hicks, Esquire (PA ID 40404)
rhicks@eckertseamans.com
213 Market Street, 8th Floor
Harrisburg, PA 17101
Tel: 717.237.6000 | Fax: 717.237.6019

Mark Johnston, Esquire (DC Bar ID 455764)
mjohnston@eckertseamans.com
1717 Pennsylvania Ave., N.W., Suite 1200
Washington, D.C. 20006
Tel: 202.659.6600 | Fax: 202.659.6699

Avery Quiles, Esquire (PA ID 329616)
aquiles@eckertsemanas.com
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
Tel: 215.851.8523 | Fax: 215.853.8383

William H. Hurd, Esquire (VSB ID 16967)
whurd@eckertseamans.com
901 E. Byrd Street, Suite 1105
Richmond, VA 23219
Tele: 804.788.9638 | Fax: 804.698.2950

*Counsel for Plaintiffs*

# EXHIBIT A

# LOWER OXFORD TOWNSHIP
# CHESTER COUNTY, PENNSYLVANIA

## ORDINANCE NO. 2026-02

## AN ORDINANCE OF LOWER OXFORD TOWNSHIP, CHESTER COUNTY, PENNSYLVANIA, AMENDING THE CODE OF THE TOWNSHIP TO ADD CHAPTER 19, SPECIAL EVENTS, AND PROVIDING FOR PENALTIES FOR VIOLATION OF THE ORDINANCE

BE IT AND IT is hereby ordained and enacted by the Board of Supervisors of Lower Oxford Township, Chester County, Commonwealth of Pennsylvania, by the authority granted to them by the Second-Class Township Code, specifically at Section 53 Pa. Stat. Ann. Section 67328 as follows:

WHEREAS, the Board of Supervisors has determined that the impact of special events that involve large numbers of attendees on roads and other infrastructure within the Township represents both a traffic hazard and an impediment to the delivery of emergency services to residents of the Township and therefore constitutes a nuisance.

NOW THEREFORE the Board of Supervisors adopts the following regulations as a part of this Ordinance:

**Section I** Chapter 19, "Special Events", is added to the Township Code as follows:

**Chapter 19. Special Events**

§ 19-101 **Purpose**

Special events are an important part of Lower Oxford Township's (the "Township") community and well-being and the quality of life of its residents. Regulation is essential to promoting success, managing impacts and protecting public health, safety and welfare. The purpose of this chapter is to ensure that public health, safety and welfare shall not be abridged by special events, as defined by this chapter, within the Township. The purpose and scope of this chapter is to define the special event threshold that would require notice to the Township and a special event permit. This requirement is intended to protect the health safety and welfare of the residents of Lower Oxford Township and protect against nuisances.

There are a number of property owners and users in the Township that, on occasion, hold special events which impact residents. These entities include, but are not limited to, churches, a golf course, a large produce market, a college, and a shopping center (as defined hereinafter, "sponsors"). The Township has observed that each of these sponsors hold special events that are unique in character, scope and purpose to their function and character. By the enactment of this Ordinance, the Township intends to support the ability

of any potential sponsor to express that function and character through Special Events, while also providing for the health, safety and welfare of all residents of the Township.

§ 19-102 **Legislative Findings**

The Board of Supervisors finds that activities associated with special events can constitute a hazard to the public's health, safety and welfare and that these activities can also create a public nuisance when unregulated.

§ 19-103 **Definitions**

For the purpose of this chapter, the following terms shall have the following meanings indicated:

**ALCOHOL PRODUCTS**
Beverages regulated by the Pennsylvania Liquor Control Board including liquor, wine, beer, ale, hard cider, flavored beverages containing alcohol as well as other items containing alcohol including shots and other similar items.

**APPLICANT**
Any person, agent, operator, firm, corporation or organization that seeks a permit from the Township to conduct a special event governed by this chapter, including a representative who has the authority to so apply granted by the entity holding the special event.

**FIRST AMENDMENT ACTIVITIES**
Activities with a primary purpose involving the exercise of freedom of speech, of association, of the press, of assembly, and petition as are guaranteed and protected by the First Amendment of the Constitution of the United States of America.

**OPERATOR**
Any person, who has charge, care or control of a special event area which is let or offered for special event use. In the even that a special event, as contemplated by this Ordinance, is proposed by an organization of any type, the operator must provide evidence of authority to apply for this permit and to operate the event.

**SPECIAL EVENT**

A. A temporary event, gathering or organized activity in the Township.

1. **The gathering of more than 500 persons** at a location and for a purpose not in the ordinary course of business or customary activity of the property owner.

2. **The event will result in substantial impact on Township resources,** facilities, or public safety services in response thereto.

B. Examples of special events include, but are not limited, to College homecoming or other similar events, college, university or school commencement, graduation or baccalaureate, , fairs, festivals, community events, half marathons, 10Ks, 5Ks and other running events, bicycle races and tours, motorcycle rides, special golf outings or events, as distinct from routine play, and other organized activity conducted for the purpose of recreation, fund-raising, for profit, nonprofit fund-raising, community or organizational promotion or charity. First Amendment events that do not involve any of the elements of this ordinance are not special events, however if the First amendment event includes an expected number of attendees at or exceeding the number identified as a special event under this ordinance then compliance with the health and safety regulations herein also apply.

C. Routine Events – certain regularly scheduled events that may or may not contain or include one or more of the elements listed above in subparagraph A may not be subject to the terms of this Ordinance, depending upon the nature of the event and the determination of the Township. Examples of such events include, but are not limited to:

1. scholastic or collegiate athletic events not connected to any additional special event, such as homecoming
2. church services
3. golf outings not connected to any additional special event
4. regular sales events

Please note that the regular occurrence of an event alone does not render it routine and that many events that occur on a regular annual or more frequent basis may still be considered special events. The Township reserves the right, at its sole discretion, to determine whether any given event qualifies as a routine event or a special event under the terms of this Ordinance.

**SPECIAL EVENT AREA**
The geographic area upon which the special event is to take place, including, for the purposes of the requirements imposed hereunder, any adjacent areas and public roads that will or may be directly or indirectly affected by the special event.

**SPONSOR**
The person, group, corporation or other entity responsible for organizing the event.

**TOWNSHIP**
The Township of Lower Oxford, Chester County, Pennsylvania

§ 19-104 **Permit Required**

No sponsor, person, association, firm, corporation, or other entity shall conduct any special event or community event as defined herein in Lower Oxford Township without first having obtained a permit from the Township.

§ 19-105 **Application for Permit**

A. The application for a permit for a special event or community event shall be submitted by the sponsor to the Township no less than 30 days prior to the special event.

B. The Township may waive the requirement of 30 days' advance notice for spontaneous special events or community events for celebrations important to the Township, the Commonwealth of Pennsylvania and the nation, including but not limited to the celebration of local sports teams and the end of wars or other conflicts of national significance. The Township may waive the requirement of 30 days' advance notice if there are circumstances unique to the sponsor which justify the waiver to assure the public safety and welfare of the Township or the Township's best interest.

C. The application shall be further accompanied by such other information as may be required by the Township.

§ 19-106 **Contents of Application**

A. The following information must be provided to the township:

1. The name of the entity submitting the application, including a physical and mailing address and contact information; and

2. The name of the authorized representative of the applying entity, if different, including contact information; and

3. A physical address for and any other relevant, practical description of the Special Event Area; and

4. A description of the special event, including:

a. the number of proposed or expected attendees

b. the activities proposed

c. proposed plan for parking on the site or a transportation plan for busing participants:

d. proposed traffic impact:

e. the proposed safety plan and procedures:

f. proposed coordination/compliance with fire and EMT services, which shall include written verification that applicant has notified the following parties or entities of the proposed Special Event:

i. Medic 94; and
ii. Union Fire Company; and
iii. West Grove Fire Company

g. proposed coordination with the Pennsylvania State Police, which shall include written verification that applicant has notified the Commanding Lieutenant at the Avondale State Police Barracks of the Special Event

B. Private Security or Police Force

Any sponsor that employs, manages or contracts with a private security or police force ("Private Security") must include the role of the Private Security in its proposal.

C. Alcoholic Produce Requirements

Any Sponsor proposing to employ any vendor or any other party engaging in the sale of alcoholic products at a Special Event must provide to the Township the notification as required by the Pennsylvania Liquor Control Board.

§ 19-107 **Application Review**

A. Township review of the application is to ensure that the date, time and place of the event, as well as the number of attendees and the traffic, parking and emergency plans are established the township does not control the operation of the actual event or interfere with the conduct of the event on the site of the event but only reviews the impact offsite caused by the special event insofar as it impacts public roads and other public safety issues.

B. The Township shall recommend either approval or disapproval of a proposed special event and shall issue, accordingly, a permit or an explanation of denial, as explained, *infra*.

C. The Township may require additional conditions not herein mentioned as may be necessary to maintain peace and order or to protect the health, safety and general welfare of the citizens of the Township or any neighboring property.

D. Final approval of a permit for the community event or special event proposed along with the Permit Fee attached shall be made by the Township.

E. Notwithstanding any other provision of this Chapter, Sponsor and special event must maintain compliance with 67 Pa.C.S. §§ 212.701, Subchapter H, Special Events.

§ 19-108 **Notification of decision on application**

Within 10 business days of the date of submission of an application, the Township shall notify the Applicant of the final decision. If the notification is an approval, it shall include any costs and/or conditions attached to the approval. If the notification is a denial, it shall include the reasons for denial.

A. Approval to conduct a special event by this process does not relieve the sponsor or any participants, including but not limited to peddlers, vendors, or exhibitors, from the responsibilities of applying for any other permits or licenses, complying with federal or state law, or meeting any other requirements of the Township's ordinances that may be applicable.

B. All events shall obtain liability insurance in the amount denoted on the application, which may change from time to time, with the Township named as an additional insured. Unless the property on which the special event is located is owned by a governmental entity. The insurance policy may be subject to the review and approval of the Township Solicitor.

C. All required permits, licenses, security deposits, fees, insurance policies or any other conditions of the permit so indicated on the permit shall be obtained no later than 10 days prior to the special event.

D. The sponsor holding the special event shall be responsible to the Township for damages sustained to Township property caused by participants in the special event.

E. All regulations and/or requirements set forth in this chapter related to events may be waived or adjusted for community events at the discretion of the Township

F. The Township, upon showing of good cause that certain conditions or requirements as herein set forth are not applicable or would cause an unreasonable burden upon the sponsor, modify the foregoing requirements after review of the circumstances presented by the sponsor.

§ 19-109 **Permit Fee**

A. No later than 10 days prior to the special event, the sponsor shall provide the Permit Fee, which shall be provided in the Township's fee schedule and may be increased, from time to time.

§ 19-110 **Revocation of permit**

A. In the event that all required and or applicable permits, licenses, fees, insurance policies or any other conditions of the permit so indicated on the permit are not obtained 10 days prior to the special event, the permit shall be revoked by the Township.

B. In the event that the Permit Fee has not been paid 10 days prior to the special event, the Township shall revoke the permit.

C. Any violation of one or more of the regulations set forth herein or conditions of the permit shall be sufficient grounds for the Township to immediately revoke the permit and order the sponsor holding the special event to cease and desist their activities. Upon such notice of immediate revocation, the sponsor shall cease and desist its activities and shall be prevented from applying for another permit for at least two years from the date of revocation.

D. If the violation is not discovered by the Township until the special event has ended, then the Township may suspend for two years the right of the sponsor conducting the special event to apply for another permit to conduct a special event.

E. The Township may consider the past performance and compliance of a Sponsor under a permit, or permits, issued according to this Ordinance in assessing a subsequent application submitted by said Sponsor; in particular, the Township may incorporate into its review any prior violation of the regulations set forth herein, including any associated suspension, and condition its determination of a subsequent application accordingly.

§ 19-111 **Appeals**

A sponsor who has been denied a permit to conduct a special event, whose permit has been revoked or whose right to apply for a permit has been suspended or revoked for violation of this chapter or contests a permit condition shall have the right to appeal said denial, suspension, revocation or condition to the Board of Supervisors, in writing, within 15 days of the date of the notice of said denial, suspension, revocation or condition. The Board of Supervisors shall conduct a hearing on said appeal within 30 days from the date of filing of the appeal. The Board of Supervisors shall render a decision within 45 days after the hearing, either upholding the denial, suspension, revocation or condition or granting the appeal and ordering the Township to grant the permit or rescind the revocation or suspension notice or remove the condition.

§ 19-112 **Violations and penalties**

A. Any person, firm or corporation who shall violate any provision of this chapter or fails to secure the permit required thereby, as the case may be, shall, upon conviction thereof, be sentenced to pay a civil enforcement fee of not more than

$1,000, plus costs. Each day that a violation of this chapter continues shall constitute a separate offense.

In addition to the above-provided penalties, the Township may maintain any action or proceedings in the name of the Township in any court of competent jurisdiction, at law or in equity, to compel compliance with or enforce any violation of this Chapter 112.

§ 19-113 **Fees.** Fees shall be established by a fee schedule adopted by resolution of the board of Supervisor§

§ 19-114 **Repealer and Severability.**

In the event that any section, sentence, clause, phrase or word of this Ordinance shall be declared illegal, invalid or unconstitutional by any court of competent jurisdiction, such declaration shall not prevent, preclude or otherwise foreclose enforcement of any of the remaining portions of this Ordinance. All Ordinances or parts of Ordinances inconsistent herewith which are in conflict with any of the specific terms contained herein to the extent of such inconsistencies or conflicts are hereby repealed.

ENACTED at a meeting of the Board of Supervisors of Lower Oxford Township on the 10th day of August, 2026.

ATTEST:

Deborah J Kinney
Secretary

LOWER OXFORD TOWNSHIP

Kevin R Martin
Kevin R. Martin, Chairman

Noël A. Roy
Noel A. Roy, Vice-Chairman

Robert McMahon
Robert McMahon, Member